1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                        FOR THE DISTRICT OF ARIZONA
8
9  Hunter Storm, an individual,          )   No. CV-07-706-PHX-SRB
                                          )
10           Plaintiff,                   )   **ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Capital One Bank, a foreign corporation, )
13                                        )
             Defendant.                   )
14                                        )
                                          )
15  ─────────────────────────────────────)

16        Pending before the Court is Defendant Capital One Bank's Motion to Dismiss

17  Plaintiff's Second Amended Complaint (Doc. 35, ("Mot. to Dismiss")).

18  **I.      BACKGROUND**

19        When Plaintiff Hunter Storm filed for Chapter 7 bankruptcy in 2001, she had an

20  outstanding balance on a Capital One credit card, which was discharged on April 10, 2002.

21  (Second Am. Compl. ("SAC") at 2.)  Subsequent to the bankruptcy discharge, Plaintiff

22  claims that Capital One improperly reported the discharged account to Defendant Credit

23  Reporting Agencies ("CRAs") Equifax, Experian, and Trans Union.  (SAC at 2–3.)

24        Between 2002 and 2006, Plaintiff estimates that Capital One reported incorrect

25  information to the CRAs approximately 180 times.  (SAC at 5.)  Each time Capital One

26  reported incorrect account information, Plaintiff allegedly disputed the report with the CRAs,

27  and, in addition, contacted Capital One directly.  (SAC at 5.)  Plaintiff alleges, upon

28  information and belief, that the CRAs informed Capital One about each dispute.  (SAC at 5.)

1   Because the Capital One account information was never removed from Plaintiff's credit

2   report, and was never updated as a result of the disputes, Plaintiff claims that Capital One

3   either failed to properly investigate the disputes, or Capital One conducted an investigation

4   but failed to report the updated information to the CRAs.  (SAC at 5.)

5       Plaintiff's Second Amended Complaint also includes facts concerning specific

6   complaints to the CRAs regarding the allegedly incorrect Capital One account information.

7    On April 9, 2005, Plaintiff claims that she contacted the CRAs by mail to dispute the Capital

8   One account information on her credit report.  (SAC at 3.)   Plaintiff states that, on

9   information and belief, the CRAs notified Capital One about the dispute.  (SAC at 3.)

10   Plaintiff claims that Capital One did not take appropriate action within thirty days of her

11   complaint as required by 15 U.S.C. § 1681s-2(b).  (SAC at 3.)

12       On February 17, 2006, Plaintiff alleges that she received a credit alert notifying her

13   that the Capital One account had been reported to the CRAs as sixty days overdue.  (SAC at

14   4.)  On or around this time, Plaintiff allegedly contacted the CRAs to dispute this report.

15   (SAC at 4.)  Plaintiff claims that, on information and belief, the CRAs notified Capital One

16   about the dispute.  (SAC at 4.)  According to Plaintiff, the account information was not

17   corrected as of April 22, 2006.  (SAC at 4.)

18       On March 18, 2006, and again on April 22, 2006, Plaintiff's credit report showed an

19   increase in the balance due on her Capital One account.  (SAC at 4.)  Again, Plaintiff claims

20   to have challenged these reports with the CRAs, who, upon information and belief,

21   subsequently notified Capital One about the dispute.  (SAC at 4.)  By August 4, 2006,

22   Plaintiff alleges that the Capital One account was not updated with the correct information.

23   (SAC at 4–5.)

24       On April 5, 2007, Plaintiff initiated this suit against Capital One.  Plaintiff's Second

25   Amended Complaint, filed January 16, 2008, alleges defamation, negligent and willful

26   violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), and adds

27   claims against three new Defendants: Equifax, Experian, and Trans Union.  Capital One now

28

asks the Court to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) for failure to state either a FCRA claim or a defamation claim.  Capital One argues that Plaintiff's FCRA claims are barred by the two-year FCRA statute of limitations, and, in the alternative, that even if Plaintiff's allegations are taken as true, Plaintiff has failed to state a claim for a willful violation of the FRCA.  With respect to Plaintiff's defamation claim, Capital One contends that the claim is both preempted by the FCRA and, further, barred by the state statute of limitations applicable to such actions.

## II.   LEGAL STANDARDS AND ANALYSIS

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997).  Thus, dismissal for insufficiency of a complaint is proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980).  A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

In determining whether an asserted claim can be sustained, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).  As for the factual allegations, the Supreme Court has explained that they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). In ruling on a motion to dismiss, the issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Gilligan*, 108 F.3d at 249.

### A.   The FCRA

Upon receiving notice of a consumer dispute from a credit reporting agency, the FCRA imposes two relevant duties on furnishers: 1) to investigate disputed information, and

- 3 -

1  2) to report the investigation results to the CRAs.  15 U.S.C. § 1681s-2(b). If the furnisher

2  fails to perform these duties, the FCRA grants consumers a private right of action for both

3  negligent and willful noncompliance. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d

4  1057, 1060 (9th Cir. 2002).  To trigger a furnisher's § 1681s-2(b) duties, a consumer must

5  first dispute the incorrect information with a CRA.  *Id.* at 1060 (citing 15 U.S.C. §

6  1681i(a)(1)(A)).[1]  This acts as a filtering mechanism that allows CRAs to dismiss frivolous

7  complaints. *Id.* (citing 15 U.S.C. § 1681i(a)(3)).  If the claim is valid, the CRA must give

8  notification of the dispute to the furnisher within five business days. 15 U.S.C. § 1681i(a)(2).

9  After receiving notice of the dispute from the CRA, the furnisher must fulfill its § 1681s-2(b)

10  duties.  Specifically, the furnisher must:

11  (A) conduct an investigation with respect to the disputed information;

12  (B) review all relevant information provided by the [CRA] . . .;
   (C) report the results of the investigation to the [CRA];

13  (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] . . .; and

14  (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any

15  reinvestigation . . . promptly–
   (i) modify that item of information;

16  (ii) delete that item of information; or
   (iii) permanently block the reporting of that item of

17  information.

18  15 U.S.C. § 1681s-2(b)(1).

19  If the furnisher fails to comply with § 1681s-2(b), liability can arise under two distinct

20  statutory provisions.  First, consumers can sue for negligent violations of the FCRA, which

21  permits recovery of actual damages and attorney's fees. 15 U.S.C. § 1681o.  Alternatively,

22  consumers can sue for willful violations of the FCRA, which allows for punitive damages

23  in addition to those specified in § 1681o.  15 U.S.C. § 1681n.  Plaintiff has pled both

24  negligent (Count Three) and willful (Count Four) violations of the FCRA by Capital One.

25

26

27  [1]A dispute filed by a consumer directly with a furnisher is not sufficient to generate liability under § 1681s-2(b).  *See Nelson*, 282 F.3d at 1060.

28  - 4 -

1  (SAC at 8–9).  Capital One seeks dismissal of Count Four claiming an absence of facts to

2  support a willful violation, and challenges both Counts Three and Four on the grounds that

3  Plaintiff's claim is barred by the FCRA's statute of limitations.

4  **1.    Statute of Limitations**

5  The FCRA imposes a two-year statute of limitations.  15 U.S.C. § 1681p.  The code

6  states, "[a]n action to enforce any liability created under this subchapter may be brought . .

7  . no later than . . . 2 years after the date of discovery by the plaintiff of the violation that is

8  the basis for such liability. . . ." 15 U.S.C. § 1681p.  As discussed above, furnishers violate

9  § 1681s-2(b) if they fail to investigate a consumer dispute, or if they fail to update any

10  inaccurate information.   The FCRA gives furnishers thirty days to comply with the

11  requirements of  §  1681s-2(b). 15  U.S.C.  §  1681s-2(b)(2) (referencing 15  U.S.C.  §

12  1681i(a)(1)).  Thus, a consumer generally will not discover a furnisher's failure to comply

13  with § 1681s-2(b) until, at the earliest, thirty days after the consumer files a complaint with

14  a CRA.

15  Plaintiff alleges violations of § 1681s-2(b) in both general and specific terms.

16  Plaintiff broadly alleges that between 2002 and 2006, she disputed the alleged inaccurate

17  Capital One account information on a monthly basis.  (SAC at 5.)   More specifically,

18  Plaintiff points to various dates that she disputed her Capital One account information with

19  the CRAs. For example, Plaintiff claims that she initiated a dispute on April 9, 2005.  Then,

20  in 2006, Plaintiff alleges that she disputed a report that her Capital One account was sixty

21  days past due, and she twice disputed reports showing that the outstanding balance on her

22  Capital One account had increased. (SAC at 4.) Plaintiff alleges that each time she disputed

23  her Capital One account information, the CRAs subsequently notified Capital One. (SAC

24  at 5.)  Because Plaintiff's original Complaint was filed on April 5, 2007, any violations

25  discovered before April 5, 2005 are time barred. The question to be resolved is whether each

26  subsequent dispute about the same allegedly incorrect information results in a new claim and

27  a new statute of limitations.

28  - 5 -

1    Capital One argues that the statute of limitations began to run after Plaintiff's first

2    dispute with the CRAs in 2002 or, at the latest, in 2004.  (Mot. to Dismiss at 6–7.)

3    According to Capital One, subsequent disputes do not give rise to a new statute of

4    limitations.  (Reply in Supp. of Mot. to Dismiss at 4.)  In essence, Capital One is arguing that

5    Plaintiff should not be able to extend the statute of limitations indefinitely by repeatedly

6    disputing the same incorrect information.

7    Plaintiff responds that each new report of the same incorrect information constitutes

8    a separate and distinct statutory violation and, therefore, gives rise to a new statute of

9    limitations.  (Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 5.)  Each time Capital One

10   allegedly violated § 1681s-2(b), this, according to Plaintiff, created a new independent claim

11   with its own statute of limitations.  (Pl.'s Resp. at 5.)  Plaintiff contends that prior disputes

12   occurring outside the statute of limitations period have no effect on subsequent disputes

13   regarding the same information.

14   No federal appellate court has addressed the statute of limitations as it applies to

15   subsequent disputes about the same incorrect information reported by a furnisher.  However,

16   in the context of reports by CRAs, the Fifth Circuit has held that "each transmission of the

17   same credit report is a separate and distinct tort to which a separate statute of limitations

18   applies." *Hyde v. Hibernia Nat. Bank in Jefferson Parish*, 861 F.2d 446, 450 (5th Cir. 1988).

19   District courts have taken the same approach when dealing with a series of disputes

20   concerning the same incorrect information provided by a furnisher, concluding that each time

21   a furnisher fails to investigate or report its findings, it commits a distinct § 1681s-2(b)

22   violation.  *See Broccuto v. Experian Info. Solutions, Inc.*, 2008 WL 1969222, at *4 (E.D. Va.

23   May 6, 2008); *Larson v. Ford Credit*, 2007 WL 1875989, at *4 (D. Minn. June 28, 2007).

24   In *Broccuto*, the court held that subsequent disputes within the statute of limitations

25   that result in § 1681s-2(b) violations are still timely although previous disputes regarding the

26   same information are time barred.  *Broccuto*, 2008 WL 1969222, at *4–5.  Broccuto filed a

27   lawsuit against a furnisher for violations of § 1681s-2(b) in 2007.  *Id.* at *1.  The furnisher

28   

- 6 -

1   moved to dismiss the suit because Broccuto disputed the same inaccurate information in

2   2003.  *Id.*  The court stated that § 1681s-2(b) is violated each time a CRA notifies a furnisher

3   about a dispute and the furnisher fails to respond as required.  *Id.* at *4.  Further, the court

4   held that "[t]he fact that the account or transactions questioned in the instant dispute may

5   have also been the subject of a previous dispute does not mitigate the obligations of the bank

6   or credit reporting agency to take the actions outlined in § 1681s-2(b)(1)(A)-(D)."  *Id.*  The

7   court also noted that its decision to hold furnishers accountable for each consumer dispute

8   was in keeping with Congress's stated finding that "[t]here is a need to insure that consumer

9   reporting agencies exercise their grave responsibilities with fairness, impartiality, and a

10  respect for the consumer's right to privacy."  15 U.S.C. § 1681(a); *Broccuto*, 2008 WL

11  1969222, at *4.

12      Likewise, the court in *Larson* concluded that the statute of limitations begins to run

13  each time the furnisher fails meet the requirements of § 1681s-2(b).  *Larson*, 2007 WL

14  1875989, at *4.   The court held that each subsequent report of the same incorrect

15  information, and the furnisher's failure to follow § 1681s-2(b) after being properly notified,

16  results in a new violation and, therefore, a new statute of limitations.  *Id.*

17      Other district courts addressing this same issue have held otherwise.  *See, e.g.*,

18  *Blackwell v. Capital One Bank*, 2008 WL 793476, at *3 (S.D. Ga. March 25, 2008).   In

19  *Blackwell*, the court held that subsequent disputes about incorrect information do not give

20  rise to a new statute of limitations when the same information was previously disputed.  *Id.*

21  at *3.  Blackwell sued a furnisher in 2006 for failing to comply with § 1681s-2(b).  *Id.* at *1.

22  The furnisher sought to dismiss the suit because Blackwell disputed the same account

23  information in 2003.  *Id.*  The court stated that "subsequently submitted complaints would

24  allow plaintiffs to indefinitely extend the limitations period and render it a nullity."  *Id.* at *3.

25  The court then dismissed the lawsuit.  *Id.*

26      After reviewing this issue, the Court is persuaded by the logic of *Broccuto* and

27  *Larson*, and rejects the *Blackwell* court's reasoning as inconsistent with the language and

28                                          - 7 -

1    purpose of the FCRA.  There are sufficient mechanisms in place to prevent a consumer from

2    extending the statute of limitations indefinitely by filing multiple identical complaints.  A

3    consumer cannot restart the statute of limitations by merely filing a new complaint with a

4    CRA.  *See Nelson*, 282 F.3d at 1060.  First, CRAs act as a filtering mechanism and can reject

5    frivolous complaints or complaints based on information previously disputed.  *Id.* (citing 15

6    U.S.C. § 1681i(a)(1)(A)); *see also* 16 C.F.R. pt. 600, App., at § 611 ¶ 11.  Second, the

7    furnisher must receive notice of the dispute from a CRA and must *violate the FCRA anew*.

8    *See Nelson*, 282 F.3d at 1060.  If the statute of limitations were to be applied in the manner

9    suggested by Capital One, consumers could be left without recourse for ongoing FCRA

10   violations simply because the furnisher had violated the FCRA in a similar way sometime

11   in the past.  This flies in the face of a key congressional finding that "[i]naccurate credit

12   reports directly impair the efficiency of the banking system, and unfair credit reporting

13   methods undermine the public confidence which is essential to the continued functioning of

14   the banking system."  15 U.S.C. § 1681(a).

15          As previously discussed, any violation that Plaintiff discovered prior to April 5, 2005

16   is untimely.[2]  Plaintiff's prior disputes about the same incorrect information have no effect

17   on the statute of limitations for current disputes because each new violation of § 1681s-2(b)

18   is an independent event that gives rise to a new statute of limitations.  Accordingly, each time

19   Plaintiff allegedly discovered that Capital One failed to respond appropriately under § 1681s-

20   2(b), this was a new violation with a new statute of limitations.  Thus, the alleged violations

21   that Plaintiff discovered after April 5, 2005 are timely under the FCRA's two-year statute of

22   limitations.

23

24   _____

25          [2]Plaintiff asks this Court to allow the alleged violations occurring prior to April 5,
     2005 to move forward under the continuing violations doctrine. (Pl.'s Resp. at 6.) However,

26   each violation of § 1681s-2(b) is a separate and distinct event, and the continuing violation
     doctrine does not apply to discrete events. *Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th

27   Cir. 2003) (Citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)).

28                                            - 8 -

1

## 2.      Liability for FCRA Violations

2          Capital One argues that Plaintiff has not stated a claim for a willful violation of the

3    FCRA.  (Mot. to Dismiss at 8–9.)  As previously discussed, to sue a furnisher for a violation

4    of § 1681s-2(b) the complaint must state that: 1) the consumer disputed the incorrect

5    information with a CRA, 2) the CRA notified the furnisher about the dispute, and 3) the

6    furnisher failed to meet the requirements of § 1681s-2(b).  *Nelson*, 282 F.3d at 1060.

7          Here, Plaintiff has pled sufficient facts to establish a violation of § 1681s-2(b) under

8    the liberal pleading requirements of Rule 8(a)(2).  The facts state that on numerous occasions

9    Plaintiff disputed the alleged errors on her credit report with the CRAs.  Plaintiff further

10   alleges that the CRAs notified Capital One about the reporting errors.  Lastly, Plaintiff

11   alleges that Capital One never conducted the required investigation, or, in the alterative,

12   Capital One conducted the investigation but failed to report the results to the CRAs.  Taking

13   these facts and allegations as true, and viewing them in the light most favorable to Plaintiff,

14   she is entitled to move forward to discovery on her § 1681s-2(b) claim.

15

### a.      Willful Violation

16         The term "willfully," as used in the FCRA, "entails a 'conscious disregard' of the law,

17   which means 'either knowing that policy [or action] to be in contravention of the rights

18   possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy

19   [or action] contravened those rights.'" *Reynolds v. Hartford Fin. Servs. Group, Inc.*, 435 F.3d

20   1081, 1098 (9th Cir. 2006) (alterations in original) (quoting *Cushman v. Trans Union Corp.*,

21   115 F.3d 220, 227 (3rd Cir. 1997)), *rev'd on other grounds by Safeco Ins. Co. of Am. v. Burr*,

22   127 S. Ct. 2201 (2007).  The Supreme Court, affirming the interpretation in *Reynolds,* stated,

23   "[t]he standard civil usage thus counsels reading the phrase 'willfully fails to comply' in §

24   1681n(a) as reaching reckless FCRA violations. . . ."  *Safeco*, 127 S. Ct. at 2209.  A FCRA

25   violation is reckless when the "conduct violat[es] an objective standard: action entailing 'an

26   unjustifiably high risk of harm that is either known or so obvious that it should be known.'"

27   *Id.* at 2215 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

28

1    Plaintiff cites a letter from Capital One that blames the incorrect reports on a computer

2    glitch, and a report from the Federal Reserve Bank of Richmond explaining the problem.

3    (SAC at 4.)   According to the Federal Reserve Bank, Capital One would make manual

4    corrections to Plaintiff's account, but Capital One's automated system continued to report

5    incorrect information to the CRAs.  (SAC at 4.)  Capital One argues that an automated

6    computer error does not constitute a willful violation. (Mot. to Dismiss at 8–9.)  In response,

7    Plaintiff argues that misreporting account information for four years, coupled with the

8    volume of the complaints submitted to the CRAs regarding the account, establishes reckless

9    behavior.  (Pl.'s Resp. at 8–9.)

10    After her 2002 bankruptcy discharge, Plaintiff claims that Capital One continuously

11    reported incorrect information about her account to the CRAs.  Over the course of four years,

12    Plaintiff allegedly challenged her Capital One account information with the CRAs almost

13    monthly.  Plaintiff pleads that each time she disputed the account information, the CRAs

14    notified Capital One about the dispute, yet Capital One failed to take the actions required by

15    § 1681s-2(b).

16    Reading the facts in the light most favorable to Plaintiff, for four years Capital One

17    received disputes about Plaintiff's account, made manual changes to the account, and a

18    computer error overrode the manual changes causing incorrect information to be reported to

19    the CRAs.  At some point during the four-year period, it is reasonable to assume that Capital

20    One should have known that the manual changes to Plaintiff's account failed to fix the

21    alleged reporting errors.  Thus, a fact finder could conclude that Capital One should have

22    known that merely making manual corrections would result in a high risk that Plaintiff's

23    account would continue to be reported inaccurately to the CRAs in violation of § 1681s-2(b).

24    In support of its argument that Plaintiff has failed to establish a willful violation of the

25    FCRA, Capital One cites to *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139 (N.D. Cal.

26    2005).  In *Howard*, the plaintiff argued that the complaint's factually bare assertions were

27    sufficient under Rule 8 because the facts needed to support Howard's willful claim were

28

1   particularly within the knowledge of the furnisher. *Id.* at 1143.  The court rejected this

2   argument and held that the plaintiff had failed to state facts sufficient to support its claim.

3   Here, the Court is not confronted with an absence of facts, but instead must decide whether

4   Capital One's alleged ongoing failure to correct account information after continuous

5   complaints over a four-year period is sufficient to move forward to discovery on a willful

6   violation claim.  While this conduct may not have been knowing, it quite possibly could have

7   "entail[ed] 'an unjustifiably high risk of harm that is either known or so obvious that it

8   should be known[,]'" rendering the conduct reckless. *Safeco*, 127 S. Ct. at 2215 (quoting

9   *Farmer*, 511 U.S. at 836).  Capital One does not even address the question of recklessness,

10   and offers no reasoning or authority to suggest that its alleged actions did not create an

11   objectively high risk of harm that it knew or should have known about.  Accordingly,

12   Plaintiff is entitled to offer evidence in support of her willful violation claim.

13         **B.     State Law Defamation**

14              **1.     Preemption**

15         In Count Six of her Second Amended Complaint, Plaintiff alleges her single state law

16   claim, defamation.  Capital One urges the Court to dismiss this claim, arguing that it is

17   preempted by the FCRA.  The FCRA contains two preemption provisions relevant to this

18   analysis:  15 U.S.C. § 1681t and 15 U.S.C. § 1681h(e).   Section 1681t(b) is a broad

19   preemption provision that provides, in relevant part:

20              (b) General exceptions

21              No requirement or prohibition may be imposed under the laws
            of any State—

22
               (1) with respect to any subject matter regulated under—
23
                     (F) section 1681s-2 of this title, relating to the
24                   responsibilities  of  persons  who  furnish
                     information to consumer reporting agencies . . .
25
   15 U.S.C. § 1681t(b)(1)(F).  The other preemption provision, § 1681h(e), states:
26
               Except as provided in sections 1681n and 1681o of this title, no
27            consumer may bring any action or proceeding in the nature of

28                                          - 11 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

The interplay between these two statutory provisions has caused much disagreement at the district court level, resulting in dozens of decisions with conflicting outcomes.  In distilling these decisions, courts have recognized three basic, distinct approaches to resolving the perceived statutory conflict—the total preemption approach, the "temporal" approach, and the "statutory" approach.  *See Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 475–79 (D. Md. 2006) (outlining the three approaches); *Davis v. Trans Union, LLC*, 526 F. Supp. 2d 577, 587–88 (D.N.C. 2007) (same); *Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255, 1259 (M.D. Ala. 2007) (same); *Pinckney v. SLM Fin. Corp.*, 433 F. Supp. 2d 1316, 1320–21 (N.D. Ga. 2005) (same).  Total preemption broadly refers to the view that § 1681t, enacted in 1996, subsumed or impliedly repealed § 1681h(e).  *See Beuster*, 435 F. Supp. 2d at 475.  The "temporal" approach operates on the belief that § 1681t(b)(1)(F) applies only after the furnisher has received notice of a dispute, and that § 1681h(e) may apply leading up to notice.  *See id.* at 476–77.  Next, the "statutory" approach separates state laws into those arising from the common law and those created by statute, and holds that § 1681h applies only to the former and § 1681t(b) to the latter.  *See id.* at 478.  Finally, other courts have avoided discussion of § 1681h(e) altogether, concluding that § 1681t preempts both common law and statutory claims.  *See, e.g., Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1181–82 (E.D. Cal. 2005).

As district courts have sought to select the approach most consistent with the statutory language and legislative intent, no single approach has emerged as the preferred interpretation, and neither the Ninth Circuit nor any other federal appellate court has had the

1   occasion to address this issue.  The parties in this case have provided little in the way of

2   analysis or argument regarding this issue, and failed to even mention the existence of §

3   1681h(e) in the briefing of this Motion.  Nonetheless, the Court undertakes its own analysis

4   and believes that its approach, which mirrors the result reached by the court in *Pinckney*,

5   albeit with a somewhat different analysis, properly reconciles these two statutory provisions.

6   *See Pinckney*, 433 F. Supp. 2d at 1320–22.

7           As a number of courts have recognized, § 1681h(e), on its face, affords immunity only

8   in the limited circumstance where the claim arises from "information disclosed pursuant to

9   section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of

10  a consumer report to or for a consumer against whom the user has taken adverse action."  15

11  U.S.C. § 1681h(e); *accord Johnson v. JP Morgan Chase Bank*, 536 F. Supp. 2d 1207, 1215

12  (E.D. Cal. 2008);  *Knudson*, 513 F. Supp. 2d at 1259–60; *Leet v. Cellco P'ship*, 480 F. Supp.

13  2d 422, 429–30 (D. Mass. 2007); *Islam v. Option One Mortgage Corp.*, 432 F. Supp. 2d 181,

14  193–94 (D. Mass. 2006).  Sections 1681g and 1681h regulate consumer reporting, a task

15  handled exclusively by the CRAs.  Section 1681m deals with users of credit information who

16  take adverse actions against consumers.  Here, Capital One is acting as a furnisher, and

17  Plaintiff does not suggest that it took any adverse action against her based on her credit

18  information.  Accordingly, § 1681h(e) does not apply to Plaintiff's claims.

19          Upon arriving at the conclusion that § 1681h(e) is inapplicable to furnishers who are

20  sued based on conduct violative of § 1681s-2, many courts have simply ended their analyses,

21  finding complete preemption of both state statutory and common law claims under §

22  1681t(b)(1)(F).  *See, e.g., Johnson*, 536 F. Supp. 2d at 1215 ("Because 15 U.S.C. § 1681h(e)

23  is inapplicable under the facts, 15 U.S.C. § 1681t(b)(1)(F) preempts [the plaintiff's]

24  defamation claim based on allegations that [the furnisher] reported information to a credit

25  reporting agency.").  Moving one step further, at least one district court has acknowledged

26  the potential conflict between § 1681h(e) and § 1681t(b)(1)(F) in situations where the former

27  section is implicated, noting in a footnote that "[t]he court expresses no opinion as to the

28                                                      - 13 -

1   interaction of § 1681t(b)(1)(F) and § 1681h(e) in cases in which § 1681h(e) applies."

2   *Knudson*, 513 F. Supp. 2d at 1260 n.4. Explaining its decision, the *Knudson* court wrote that

3   it would "not undertake to resolve a theoretical conflict between statutes unless the statute

4   which allegedly causes the conflict with the other, unambiguous, statute applies in the case."

5   *Id*. at 1259. Although § 1681h(e) applies in this case no more than it did in *Knudson*, the

6   potential for conflict is more than theoretical—conflict is all but inevitable when § 1681h(e)

7   is implicated. If the Court were to stop short of examining the interaction between § 1681t(b)

8   and § 1681h(e), a paradoxical situation would surely arise: § 1681t(b) would have one

9   meaning when applied to those people covered by § 1681h(e), and another for those who are

10  not. Of course, this would mean that Congress, without saying so, intended the same

11  statutory phrase to carry a different meaning depending on who it was to be applied to, a

12  result that the Court finds less than probable.

13      Section 1681t(b) begins with the sentence: "[n]o requirement or prohibition may be

14  imposed under the laws of any State." This phrase, which makes no distinction between

15  common law "requirement[s] and prohibition[s]" and those arising from statute, has led to

16  disagreement in the courts over whether it was intended to sweep in common law claims in

17  addition to those created by statute. To understand a statutory scheme, individual provisions

18  cannot be viewed in isolation, but must be understood in relation to the context in which they

19  reside. *See United States v. Morton*, 467 U.S. 822, 828 (1984). Thus, it is necessary to

20  examine § 1681t(b) within the context of the FCRA's other preemption provision, §

21  1681h(e).

22      If § 1681t(b) were a total bar to any state law claim, then § 1681h(e) would be

23  stripped of much of its meaning. This is best illustrated by contrasting the situation in this

24  case with one that could easily arise given a slightly different set of facts. Were the Court

25  to construe § 1681t(b) as a complete bar to state statutory and common law claims, Plaintiff

26  would be prevented from bringing her defamation claim against Capital One. However,

27  under a hypothetical, yet highly plausible, set of facts, if Capital One were a user of credit

28                                          - 14 -

1   information "taking adverse actions on [the] basis of information contained in consumer

2   reports," 15 U.S.C. § 1681m(a),—as lenders often do—then § 1681t(b)(1)(C) would apply

3   and so would § 1681h(e).  Simply based on the applicability of a subsection of § 1681t(b),

4   one taking a complete preemption approach would conclude that any action, whether based

5   in state statute or common law, is preempted.  Yet, that directly conflicts with § 1681h(e)'s

6   language permitting defamation, negligence, or invasion of privacy actions in situations

7   where § 1681m is violated "with malice or willful intent to injure such consumer."  15 U.S.C.

8   § 1681h(e).

9          This statutory conflict presents the Court with a dilemma: should the phrase "[n]o

10  requirement or prohibition may be imposed under the laws of any State," 15 U.S.C. §

11  1681t(b), be interpreted to preempt all statutory and common law claims when applied to

12  furnishers' conduct regulated under § 1681s-2, but carry a different meaning when applied

13  to persons taking action covered by § 1681h(e)?  In answering this question, the court first

14  turns to the longstanding canon of statutory interpretation which holds that "[a] statute should

15  not be construed as to be rendered meaningless."  *Wilshire Oil Co. of Cal. v. Costello*, 348

16  F.2d 241, 243 (9th Cir. 1965).  While some portions of §§ 1681g, 1681h, and 1681m are not

17  covered by § 1681t(b), the vast majority are.  Accordingly, a reading that applies § 1681t(b)

18  to all state laws would either render § 1681h(e) substantially meaningless, or give § 1681t(b)

19  a different meaning depending on who it is applied to.  Because both of these results require

20  strained, contradictory readings of the statutory scheme, a logical alternative is one that

21  allows both § 1681h(e) and § 1681t(b) to exist without overlapping and conflicting with one

22  another.

23         Also supporting the Court's reasoning is the plain language of §§ 1681h(e) and

24  1681t(a).  Section 1681h(e) is phrased not as an exception to § 1681t(b), but instead as a

25  limitation on liability that appears to presume that one could otherwise be potentially liable

26  for the actions outlined in § 1681h(e) in the absence of the protections given therein.  This

27  phrasing undermines arguments that stretch the coverage of § 1681t(b) to encompass actions

28                                          - 15 -

within the purview of § 1681h(e).  What is even more telling, however, is § 1681t(a), which states:

> Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

This section, which starts from the premise that state laws are not presumed preempted by the FCRA, goes on to enumerate the "[g]eneral [e]xceptions" to the rule that "the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft" be preempted "only to the extent of the inconsistency."  15 U.S.C. § 1681t(a), (b).  Those "[g]eneral [e]xceptions," detailed in § 1681t(b), cannot be broader than § 1681t(a), from which they are excepted.  Section 1681t(a) is concerned only with state statutes having to do with the regulation of the consumer credit reporting industry.  Nowhere does it discuss common law actions, such as those in the nature of defamation, and it would seem odd that Congress would intend the "[g]eneral [e]xceptions" to § 1681t(a) to extend beyond that to which § 1681t(a) was directed.  Moreover, § 1681t(b) excepts a smattering of state laws relating to the credit industry, including statutory sections from Massachusetts, California, Vermont, Colorado, Georgia, Maine, Maryland, and New Jersey.  Notably absent is any mention of state common law.

In arriving at the conclusion that § 1681t(b) only preempts state statutory claims, the Court is closely aligned with the logic of those courts subscribing to the "statutory" approach, *see, e.g., Beuster*, 435 F. Supp. 2d at 478, while simultaneously embracing a narrow reading of § 1681h(e), *see, e.g., Knudson*, 513 F. Supp. 2d at 1259–60.  The statutory approach takes the view that § 1681t(b) works to preempt state law claims created by statute, while § 1681h(e) operates concurrently to preempt common law claims.  *See Beuster*, 435 F. Supp. 2d at 478; *Barnhill v. Bank of Am., N.A.*, 378 F. Supp. 2d 696, 703–05 (D.S.C.

- 16 -

2005). The Court's sole disagreement with *Beuster*, *Barnhill*, and other courts that have adopted the statutory approach, is their expansive view of § 1681h(e), which fails to recognize that § 1681h(e) preempts only certain common law claims against a limited group of actors within the credit reporting regulatory structure.

In sum, § 1681t(b) preempts conflicting state statutory provisions without affecting a plaintiff's ability to bring a common law claim. *See Pinckney*, 433 F. Supp. 2d at 1321–22. Section 1681h(e) operates in tandem to preempt common law claims, but only when such claims fall within the narrow coverage of § 1681h(e)—generally dealing with the CRAs' disclosure of consumer information and users who take actions based on that information—and only when the claims are not based on "information furnished with malice or willful intent." 15 U.S.C. § 1681h(e); *see Pinckney*, 433 F. Supp. 2d at 1321–22. Accordingly, Capital One's Motion to Dismiss Plaintiff's defamation claim, which relies on the mistaken premise that § 1681t(b) preempts common law claims, fails. Furthermore, § 1681h(e) is inapplicable to Plaintiff's claim because Capital One was acting in a capacity outside of § 1681h(e)'s scope.

## 2. Statute of Limitations

Relying on Arizona's one-year statute of limitations for "injuries done to the character or reputation of another by libel or slander," Arizona Revised Statutes § 12-541, Capital One argues that Plaintiff is barred from moving forward with her defamation claim. Plaintiff's original Complaint was filed on April 5, 2007, thus, any violations that accrued before April 5, 2006 are time barred by the plain language of § 12-541. As discussed above, Plaintiff has alleged discrete violations of § 1681s-2(b), with the facts supporting those violations also serving as the basis of her defamation claim. At least one of the alleged § 1681s-2(b) violations, triggered by Plaintiff's actions on or about April 22, 2006, is within the one-year limitations period and is sufficient to permit Plaintiff to move forward to discovery on this claim.

1    **IT IS ORDERED** denying Defendant Capital One Bank's Motion to Dismiss

2  Plaintiff's Second Amended Complaint (Doc. 35).

3

4    DATED this 15th day of September, 2008.

5

6

7

8  _____

Susan R. Bolton
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28